THE STATE, on the relation of SHARPE, *v.* BANKS.

HABEAS CORPUS.—APPEALS.—Section 577 of the code applies only to appeals from interlocutory orders or judgments. Where a final judgment has been rendered upon a writ of *habeas corpus*, an appeal will lie to the Supreme Court, as in other cases, under sections 550 and 556 of the code.

PARENT AND CHILD.—The father is the natural guardian of his infant child and is entitled to the custody of it. But if, by reason of immoral or vicious habits, he is unfit to have the custody and training of his child, the court will refuse to award it to him, or will even direct it to be taken from him.

HABEAS CORPUS.—INFANT.—A writ of *habeas corpus* proceeds upon the ground of an illegal restraint, and if such restraint is found to exist it is

the duty of the court to free the person from it. But the court is not bound to deliver the custody of an infant to any particular person, but should do so if, under the circumstances, it ought to be done.

SAME.—If no restraint is found to exist, and the infant is of an age of discretion, the court may simply declare it at liberty to go where it will. But when the child is too young to exercise a discretion, or have a choice, it is the duty of the court to award the custody to the person legally entitled thereto.

APPEAL from the *Delaware* Circuit Court.

ELLIOTT, J.—*Sharpe*, the appellant, petitioned the judge of the *Delaware* Circuit Court, in vacation, for a writ of *habeas corpus*, directed to *Banks*, requiring him to bring before the judge at chambers, a certain male child, aged three years and five months, and show the cause of his detention.

The petition stated that *Sharpe* was the father of the child, the mother being dead, and that said *Banks* was the grand-father. A writ of *habeas corpus* was accordingly issued, and made returnable before the judge at the court house in *Muncie*, on *Saturday, February* 13th, 1864, at 9 o'clock A. M. No return was made to the writ at the time required. Afterward, at the *April* term, 1864, of said *Delaware* Circuit Court, on *Sharpe's* motion, the case was placed on the docket of the court, and by order of the court an attachment was issued against *Banks*, directed to the sheriff of *Marshall* county, and also requiring *Banks* to bring with him the said child. The writ of attachment was served and returned at the *October* term of the court, 1864. *Banks* appeared and moved the court to quash and set aside the writ of *habeas corpus*. The motion was based on an affidavit alleging, *inter alia*, that said writ was delivered to him on the 11th of *February*, 1864; that he was thereby commanded to appear before the judge of said court on the 13th of the same month, at the court house in *Muncie*; that, in obedience to the writ, he did appear at the court house at the time and place as commanded, with said child, and remained there until after noon of said day; that the judge did not appear, and being informed that he was absent from said county, and the time of his return thereto uncertain, he, said *Banks*,

could not return said writ; that he had but a short time previously sold his farm in *Delaware* county and purchased one in *Marshall* county, in this State; that previous to the service of the writ he had made arrangements to move, with his family and stock, to said last named county, part of his property being then on the road; that he could not longer remain in *Delaware* county, and had accordingly moved in good faith to *Marshall* county, where he had ever since continued to reside. The court overruled the motion to quash the writ. *Banks* then filed a return to the writ. It admits that *Sharpe* is the father of the child, but alleges that the child's mother, *Desdemona Sharpe*, was the daughter of said *Banks*, and the latter was consequently the grandfather of the child; that said *Desdemona*, the mother, died on the 10th of *December*, 1860, when said child was only a little over three months old, and in very feeble health; that on her death-bed the mother and father, the relator, gave said child to the defendant and his wife, to be reared as their own child until he was twenty-one years of age, they to have the entire care, custody and control of the child, and to raise and educate it without charge; that, in pursuance of said agreement, *Sharpe* delivered the child to the defendant, who has kept it ever since. It further alleges that at the time he took the child, and for a long time afterward, it was in delicate health, and required the utmost care and attention; that by his care and attention to the child he had incurred a large expense, which, including other expenses in rearing the child, amounted to the sum of $300, which the relator had not paid or offered to pay. The return further alleged that the grand father and grand mother had become greatly attached to the child, and that it required the care and attention of the latter, which no other person could supply. The return was verified by the affidavit of *Banks*. *Sharpe* filed exceptions to the sufficiency of the return, but they were overruled by the court. On the final hearing the court found for the defendant, and ordered and adjudged

that he have the sole control, care and custody of the child, until otherwise ordered by the court, and that *Sharpe,* the relator, pay the costs and charges therein expended. *Sharpe* appeals.

The first question for our examination is that of the jurisdiction of this court of the appeal. The record shows that *Sharpe* prayed an appeal at the time the final order and judgment in the case were rendered by the Circuit Court, which the court granted, on his filing a proper bond in the sum of $200, with *Jacob Bowers* as his surety, within thirty days from the date of said order. The bond was duly filed as required, but the appeal was not perfected by filing a record of the cause in this court within the time limited by the statute. The record before us was filed in this court on the 5th of *February,* 1866, more than a year after the final order in the case in the court below. The appellee insists that, under the statute, the appeal must be taken at the time the final order or judgment is rendered in term, and perfected by filing the bond, and also the transcript of the cause in this court, within the time limited by the statute; that having failed to file the transcript as required, he thereby abandoned his appeal, and is not authorized to appeal in vacation, as in other cases of final judgment.

The appeal prayed in term was evidently abandoned by a failure to file the record in this court within the time limited by the statute. If the appeal can be sustained, it must be on the ground that it might be taken in vacation, at any time within three years from the rendition of the judgment in the Circuit Court. Section 576 of the code provides that appeals to this court may be taken from an interlocutory order of any Court of Common Pleas, or Circuit Court, or judge thereof, in certain specified cases. The fourth specification reads thus: "Orders and judgments upon writs of *habeas corpus,* made in term or vacation." And the 577th section provides that, "Such appeals may be taken at the term of the court at which the order is made; or when made in vacation,

the appeal may be taken at the time, or during the next term; the appeal shall not be granted until the appellant has filed an appeal bond, as in other cases of appeal." These provisions of the statute apply only to appeals from interlocutory orders or judgments, and not to final ones. There may be interlocutory orders and judgments made in cases of *habeas corpus* to which these provisions of the statute would properly apply, but here the orders appealed from are final, and make a final disposition of the cause and proceedings. They constitute, in legal effect, a final judgment in the case, from which we think an appeal lies, and, in this case, is properly taken under sections 550 and 556 of the code. We are referred to *Staley* v. *Dorset*, 11 Ind. 367. That was an order for the sale of the real estate of a decedent for the payment of debts. The appeal was taken in vacation, after the order was made, and before the cause was finally disposed of. But in *Nichols* v. *Cornelius*, 7 Ind. 611, it was held that an appeal in vacation might be taken from the final order of a judge on a writ of *habeas corpus*, without giving a bond. The principle decided in that case is applicable here.

A bill of exceptions purports to set out all the evidence given in the cause. It appears from the evidence that *Sharpe* and his wife, *Desdemona*, had four children; that a short time before her death, the mother requested that her mother, Mrs. *Banks*, "should take the baby," the child in controversy, "and also their oldest daughter;" that, after the death of their mother, *Banks* and his wife, by the consent of *Sharpe*, took the two children to their home and properly provided for them; that subsequently *Sharpe* married a second wife, and then desired to have the children. *Banks* permitted him to take the girl, but refused to give up the little boy. The bill of exceptions, after setting forth the evidence on other points, makes this statement; "It was also in evidence that both *Banks* and *Sharpe* were proper persons to have the care, custody and education of the child; nothing being shown against the moral character of either."

The statute providing for the appointment of guardians for minor children contains the following provisions, viz: "Every guardian so appointed shall have the custody and tuition of such minor, and the management of such minor's estate, during minority, unless sooner removed or discharged from such trust. *Provided*, that the father of such minor, or if there be no father, the mother, if suitable persons respectively, shall have the custody of the person, and the control of the education of such minor." 2 G. & H., § 6, p. 566.

The father is the natural guardian of his infant child, is responsible for its raising and education, and has the right to its custody. This is the well settled rule, and the statute is simply declaratory of the right as it existed at common law. The law, however, has a tender regard for the interest of the infant, and in case it is made to appear that the father, by reason of his immoral and vicious habits and conduct, is rendered unfit to have the custody and training of his infant child, the court will refuse to award it to him, or will even direct it to be taken from him and placed where its moral training will be properly cared for. But if the father be a suitable person, the statute is express that he shall have the custody of the person and control of the education of his minor child. A *habeas corpus* proceeds on the ground of an illegal restraint, and if upon the hearing such illegal restraint is found to exist, it is the duty of the court to free the person from it, but the court is not bound to deliver an infant to the custody of any particular person, but may, and indeed should do so, if, under the circumstances, it is made to appear that it ought to be done. The court should judge upon the circumstances of the particular case, and give direction accordingly. If no restraint is found to exist, and the infant is of sufficient age to be capable of using a discretion, the court may simply declare it at liberty to go where it will. But where the child is too young to exercise a discretion or have a choice, it is the duty of the court to award the custody to the person legally entitled to

it, "because the law presumes that where the legal custody is, no restraint exists, and where the child is in the hands of a third person, that presumption is in favor of the father." *The King* v. *Greenhill*, 4 Adol. & Ellis 624; *The King* v. *Isley et ux.*, 5 *id.* 441; *Rex* v. *Delaval*, 3 Burr. 1436; *Commonwealth* v. *Addicks et ux.*, 5 Binn. 520.

In *Bounell* v. *Berryhill*, 2 Ind. 613, the petitioner was the grand-father of the children, and had been duly appointed their guardian; they were of the ages of 9 and 11 respectively, and were living with their step-mother, their father and mother both being dead. The step-mother's character was unexceptionable, and she had taken good care of the children, clothed them well and sent them to school. The children wished to remain with her, and were not willing to live with their grand-father. The court below dismissed the writ, and ordered that the children be left at liberty to remain with the step-mother. This court reversed the case, and instructed the court below to render judgment that the appellee deliver up the bodies of the children to their guardian. BLACKFORD, J., said: "This is a plain case in favor of the guardian. The statute is express upon the subject. * * * The children, being under the age of fourteen years, had no authority under the statute to choose a guardian, and we consider the petitioner to have the right, without regard to the wishes of the children, to their custody. * * * The petitioner stands in the same situation in regard to the custody of the children as a father."

In *Dalton* v. *The State*, 6 Blackf. 357, it was held that the mother of an illegitimate child is its natural guardian, and has a right to its custody. In that case, the mother gave the child to a third person to keep. She subsequently married, and then she and her husband claimed the child, and it was held that the gift of the child by its mother and natural guardian to the defendant, did not deprive her before her marriage, nor did it deprive her and her husband after the marriage, of the right to the custody of the child

during ,its infancy. See also, as to the latter point, *Mayne* v. *Baldwin*, 1 Halst. Ch. R. 454. These cases are decisive of the case at bar. The father is admitted to be a suitable person; the child is too young to exercise a discretion, and, as the natural guardian, the father is entitled to its custody, and the court erred in not awarding it to him. This is not a controversy between the father and the mother of the child, living apart, in which courts sometimes exercise a liberal discretion, and especially if it should appear that the child is of such tender age as to require the nursing care of the mother. The leading cases on this whole subject will be found collected in Hurd on Habeas Corpus, p. 465, *et seq.*

The appellee assigns, as a cross-error, the overruling of his motion to set aside and quash the writ of *habeas corpus.* We think the court did right. The writ of *habeas corpus* was delivered to the appellee the day it was issued; he made no return to it, but soon afterward removed with the child from *Delaware* to another and distant county in the State. The failure of the judge to attend at the court house at the time and place the writ was returnable was not the fault of the relator. The writ had not filled its office, and *Sharpe* was entitled to have it returned, and to a hearing upon it. The facts set up, that *Banks* was at the time in the act of removing to *Marshall* county, and could not conveniently remain longer in *Delaware*, were proper matters for the court in disposing of the attachment for contempt, but they constituted no valid excuse or justification for his failure to return the writ, and abide the hearing and final judgment of the court.

The judgment of the Circuit Court is reversed, with costs, and the cause remanded, with instructions to render judgment that the appellee deliver the body of the child to its father.

*T. J. Sample*, for appellant.

*W. March* and *W. Brotherton*, for appellee.