Garner *v.* Gordon.

---

## Garner *v.* Gordon.

HABEAS CORPUS.—*Change of Venue.—Trial by Jury.*— A proceeding by *habeas corpus* is not a civil action within the meaning of section 207 of the code, authorizing a change of venue; nor is it a civil case within the meaning of section 20 of the bill of rights, authorizing a trial by jury.

SAME.—*Evidence.—Wife.*—It is error to permit a petitioner in a writ of *habeas corpus* to testify to conversations had with the wife of the respondent, during his absence, there being no proof of agency. Nor can the wife testify to such conversations, she not being a party to the proceeding.

SAME.—*Petition by Mother.* — *Character.—Evidence.* — Where the petitioner claimed the custody of her two daughters, aged nine and eleven years, and the return alleged that she was an unsuitable person to be entrusted with the custody and moral and intellectual training of her infant daughters, and as evidence thereof it was charged that she was an unchaste and impure woman, and that her general character for chastity and virtue was bad in the neighborhood, the first allegation authorized proof of particular acts of unchastity, and under the second allegation her general reputation was involved, and the proof was not confined to two years, as provided in the divorce law; but having shown the character at the time of the trial, it was competent to show how long such reputation had been established.

SAME.—*Mother and Guardian.—Custody of Children.*—Where the question as to custody is between the mother of female children and their guardian, the wishes of the parties should be placed out of view and the best interests of the children considered. If the mother be impure in life and in her associations, and keep in her possession immoral and vile publications, and wander about from place to place with evil company, having no home for her children, she is not a suitable person to have the care of them.

Garner *v.* Gordon.

SAME.—*Custody Pending Appeal.*—It is error in a judge, after a finding in favor of the mother, and against the guardian, and after an appeal is prayed and bond given, to change the custody of the children from the guardian to the mother pending the appeal.

SAME.—*Evidence.— Past Treatment.*—Evidence was proper to inform the court how the children had been treated by the guardian and by those in whose custody he had placed them, and how they would likely be treated if the petitioner received the children in her charge.

APPEAL from the Floyd Common Pleas.

BUSKIRK, J.—Belle A. Gordon, the appellee, petitioned the judge of the Floyd Common Pleas Court, in vacation, for a writ of *habeas corpus* directed to Garner, the appellant, requiring him to bring before the judge, at chambers, Nellie A. Gordon, aged eleven years, and Mary E. Gordon, aged nine years, and show the cause of their detention.

The petition stated that the petitioner was lawfully married to Edwin Gordon, and that she had two children by him, who are now living, to wit, Nellie A. Gordon, aged eleven years, and Mary E. Gordon, aged nine years; that on the 8th day of August, 1863, her said husband departed this life, leaving said children in the care of the petitioner, as their mother; that she is now, and has been ever since the death of her said husband, a widow, and that she is entitled to the care and custody of her said children, as their mother, their father being dead, as above stated; but said children are detained and kept from her by one Lewis L. Garner, in the city of New Albany, Floyd county, State of Indiana, with whom said children are now living; and said Garner refuses to permit her to take or remove them from his house, or to even permit said children to go on the street with her; and when said petitioner had called at the house of said Garner to see her said children, she had been abused and ordered therefrom; that the said petitioner, with the means that said children have in their own right, and with what she can supply, is able and is perfectly willing to care for and support said children, and, therefore, claims the control of her said children, as of right; wherefore, etc.

A writ of *habeas corpus* was accordingly issued and made

returnable on the 18th day of July, 1871, at nine o'clock A. M., before the judge, at the court-house, in the city of New Albany, Indiana. The writ was returned executed, with the children named in custody.

Upon the return of the writ, the appellant filed his written application, supported by affidavit, asking for a change of venue from the said judge, upon the following grounds, viz.: first, because, as he believes, the Honorable Patrick H. Jewett, the judge before whom said cause is pending, is and will be a material witness for him, said defendant, on the trial of said cause; and, second, because of the bias and prejudice of the said Honorable Patrick H. Jewett, the judge before whom said cause is pending, in favor of the plaintiff and against the defendant in said cause. The motion was overruled, and the appellant excepted.

The appellant filed his written motion to quash the writ of *habeas corpus* upon the ground of the insufficiency of the petition, in this, that it does not allege that the said children were restrained of their liberty, and because there is no averment of the cause or pretence of such restraint; which motion the court overruled, and the appellant excepted.

The appellant then filed his verified return to the writ of *habeas corpus*, which was as follows:

"The defendant, Lewis L. Garner, for return to the writ of *habeas corpus* herein issued, and to him directed, states on oath that he has and keeps the said Nellie A. Gordon and Mary E. Gordon, in said petition and writ mentioned, in his custody and possession, under the authority and by the directions of Alfred W. Bently, who is, and has been for three years, the guardian of their persons and estates, under the appointment of the said court of common pleas of Floyd county; who is a resident of the city of New Albany, in said county; and that, as such guardian, the said Alfred W. Bently, for the reasons hereinafter stated, is lawfully entitled to the custody of their persons, as against their mother, the plaintiff herein, who is now, and has been for more than a year last passed, a non-resident of the State

of Indiana, to wit, a resident of the State of Kentucky; that the said Edwin Gordon, the father of said infants named in the petition, died at Floyd county, Indiana, in which county his estate is now in process of settlement; that said Nellie A. and Mary E. have always resided in this State and county, and that all the funds belonging to them are in the State of Indiana, and the county of Floyd. He further avers that said guardian, Alfred W. Bently, is the real party in interest herein, and this defendant solely acts under his direction and for him; and he further avers that if the custody of said children should be given to the petitioner, she intends to take them out of the jurisdiction of this court to the State of Kentucky. And the said defendant says that since the death of their father, the said Nellie A. Gordon and Mary E. Gordon have been nursed, taken care of, and provided for by this defendant and his wife, and have lived with and been treated by this defendant and his wife as their own children; that for years past the plaintiff has continuously treated her said children with coldness and neglect; that she has provided no home for them, and has now no home of her own to take them to; that she has neglected and abandoned her said children, even in sickness, and has ever manifested but little, if any, affection for them; that for years past she has wandered around from place to place, apparently unmindful of her said children, or of what would or might become of them; that on more than one occasion she has threatened to take the lives of her said children; that the plaintiff is, and has for years past been, a bawd and immoral woman, and has had, and now has, a notoriously bad reputation for chastity and virtue; and, therefore, this defendant says that the plaintiff is not a suitable person to have the custody of the persons of the said children. And said children are now produced before the court.

"L. L. GARNER.

"And the defendant, answering further, excepts to the sufficiency of the complaint herein, for the reason that the same does not aver that said children are restrained of their lib-

erty, and there is no averment in said complaint of the cause or pretence on the part of the defendant, Lewis L. Garner, for such restraint, as required by the statute in such cases made and provided.                    LEWIS L. GARNER."

And thereupon the said petitioner filed her exceptions to the return as follows:

"First. The said Belle A. Gordon excepts to the sufficiency of that part of the return made by Lewis L. Garner to the writ of *habeas corpus* which alleges that said Garner has and keeps the said Nellie A. Gordon and Mary E. Gordon in his custody and possession under the authority and by the direction of one Alfred W. Bently, as appears and is alleged in the lines numbered from three to thirteen, inclusive, for the reason that said part of said return does not state facts sufficient to constitute a legal excuse for the detention of said Nellie A. and Mary E. Gordon from the said Belle A. Gordon by the said Lewis L. Garner.

"Second. And the said Belle A. Gordon excepts to as much of said return as alleges that the said Nellie A. Gordon and Mary E. Gordon have been nursed, taken care of, and provided for by the said Garner and his wife, and have been treated by them as their own children, as set forth in lines of said return from fourteen to eighteen, inclusive, for the reason that the matters stated in said part of said return do not contain a legal excuse for the detention of said Nellie A. and Mary E. Gordon from the said Belle A. Gordon by said Lewis L. Garner,

"Third. The said Belle A. Gordon excepts to the sufficiency of so much of said return as alleges that the said Belle A. Gordon has provided no home for them (the said Nellie A. and Mary E. Gordon), and that she has no home of her own to take them to, as set out in the lines of said return numbered from twenty to twenty-one, inclusive, for the reason that said part of said return does not state facts sufficient to constitute a legal excuse for the detention of the said Nellie A. and Mary E. Gordon from this petitioner.

"Fourth. The said Belle A. Gordon excepts to the suffi-

ciency of so much of said return, 'that the said Belle A. has for years past wandered from place to place, apparently unmindful of her said children, or what might or would become of them,' set out in lines of said return numbered from twenty-four to twenty-seven, inclusive, for the reason that said part of said return does not state facts sufficient to constitute a legal excuse for the detention of said children from the petitioner.

"Fifth. The said Belle A. Gordon excepts to so much of the return of the said Lewis L. Garner to said writ as alleges that the said Belle A. Gordon 'has had and now has a notoriously bad character for chastity and virtue,' for the reason that said part of said return does not state facts sufficient to constitute a legal excuse for the detention and restraint of the said Nellie A. and Mary E. Gordon by said Garner.

"Sixth. The said Belle A. Gordon further excepts to the sufficiency of said return, because it does not appear therefrom that said Garner has the ability to maintain said children.

"Seventh. And said Belle A. Gordon excepts to so much of the return of said Garner to said writ as alleges 'that the petitioner is a resident of the State of Kentucky; that the father of said children resided in Floyd county, Indiana; that their estate is in said county of Floyd; that said Garner is acting under the direction of Alfred W. Bently; and that this petitioner intends to remove said children beyond the jurisdiction of this court;' as set out in lines of said return numbered from thirty-five to forty, inclusive, because said part of said return does not state facts sufficient to constitute a legal excuse for the restraint and detention of said children by said Garner.

"DAVIS & DOWLING, Att'ys for Pet'r."

The court overruled the first, fifth, and sixth exceptions, and sustained the second, third, fourth, and seventh exceptions; to which ruling of the court, in overruling

the first, fifth, and sixth exceptions, the appellee excepted; and to the ruling of the court in sustaining the second, third, fourth, and seventh exceptions, the appellant excepted.

And the said appellee replied in denial of the return of the said appellant.

And the cause being at issue, and being called for trial, the appellant demanded of the court that the same should be tried by a jury; which motion the court overruled, and the appellant excepted.

And thereupon the cause was submitted to the court for trial, and resulted in a finding for the petitioner, and that she was entitled to the custody of the said children.

"And thereupon the defendant, Garner, moved the court for a new trial, and time is given until to-morrow morning to file his reasons therefor. And it is ordered by the court, that during the pendency of these proceedings, and until the further order of the court herein, Nellie A. Gordon and Mary E. Gordon be placed in the custody of Sarah E. South, in the city of New Albany, Indiana; and the said Sarah E. South, in open court, accepts said appointment; and said Nellie A. Gordon and Mary E. Gordon were delivered to her."

And afterward, to wit, on the 22d day of July, 1871, the appellant filed in writing the following reasons for a new trial:

1. Because of irregularity in the proceedings and orders of the court, by which the said Garner was prevented from having a fair trial, in these particulars:

a. In that the court overruled said Garner's application for a change of venue, over his exception.

b. In that the court overruled said Garner's motion to quash the writ issued herein, for insufficiency of the petition, over said Garner's exception.

c. In that the court sustained said Gordon's exceptions numbered the second, third, fourth, and seventh, to the return of the said Garner to said writ.

d. In that the court overruled said Garner's demand for

a jury to try the issues in the above-entitled matter, over said Garner's exception.

2. In that the finding of the court is not sustained by sufficient evidence.

3. In that the finding of the court is contrary to the law.

4. Because of error of law occurring at the trial and duly excepted to at the proper time by this defendant, Garner, in these particulars, viz.:

a. In that the court permitted said Belle A. Gordon to testify to conversations between her and the wife of the said respondent Garner, on or about June 15th, 1871, at the said Garner's house, in the absence of the said Garner.

b. In that the court refused to permit the said Garner to prove by the testimony of James G. Shields, George Lyman, Lucien G. Mathews, Mrs. Sarah South, Mrs. Elizabeth Mann, all of them competent and duly sworn witnesses, that the general reputation of the said Belle A. Gordon, the petitioner herein, for virtue and chastity, in the community where she resided, had been bad from the year 1864 continuously until the commencement of this proceeding.

c. In that the court refused to permit the respondent, Garner, to prove by Alfred W. Bently, a competent and duly sworn witness, that the petitioner had provided no home for the children named in the petition, and has now no home of her own to take them to.

f. In that the court refused to permit the respondent Garner to prove, by the testimony of Alfred W. Bently, that the petitioner has not the ability and means to take care of said children.

g. In that the court permitted the petitioner to prove, by the testimony of said Bently, that he had agreed at one time to resign the guardianship of said children, in consideration of said petitioner's signing a deed for certain property.

h. In that the court refused to permit Lucinda Garner, wife of the said Lewis L. Garner, after she had been duly sworn in the cause, to testify upon any of the issues joined in said matter.

i. In that the court erred in permitting the petitioner, after the evidence for the defendant had closed, to testify that she had never, at any time, had illicit intercourse with certain persons named.

j. In that the court ordered, during the pendency of said proceeding, and before the motion for a rehearing was filed, immediately after its finding, that the children named in said petition be committed to the custody of Mrs. Sarah E. South for a period of time longer than the progress of the proceedings herein, over respondent's exceptions.

The court overruled said motion, and the appellant excepted. The court thereupon rendered final judgment in favor of the petitioner on the finding, to which judgment the appellant at the time objected and excepted.

And thereupon the defendant Garner prayed an appeal to the Supreme Court, from the order and judgment of the court below, which was granted upon the filing of an appeal bond in the sum of one thousand dollars, conditioned according to law, with Lucien G. Mathews his surety, which bond was then filed and approved; and he also filed bills of exceptions, numbered from one to five inclusive, duly signed and sealed in open court, and fifteen days' time was given to file further bills of exceptions; and thereupon the defendant moved the court, in writing, to remand Nellie A. and Mary E. Gordon into his custody, and from the custody of the said Sarah E. South, to whom said children were committed by the court during the pendency of these proceedings and until the further order of the court, to remain in his custody during the period prescribed by law; which motion was overruled, and the appellant excepted.

The appellant has assigned a large number of errors, but all the questions arising in the record are included within five assignments of error, namely:

1. That the court erred in refusing to grant a change of venue.

2. That the court erred in not permitting the cause to be tried by a jury.

Garner *v.* Gordon.

3. That the court erred in overruling the motion for a new trial.

4. That the court erred in rendering judgment on the finding of the court.

5. That the court erred in refusing to give to the appellant the custody of the children during the pendency of his appeal in this court.

All the other errors assigned are mere repetitions of the reasons for a new trial, and are embraced by the assignment that the court erred in overruling the motion for a new trial.

The first question presented for our decision is, was the appellant entitled to a change of venue? The solution of this question depends upon whether the proceeding by *habeas corpus* is a civil action within the meaning of section 207, 2 G. & H. 154. That section gives a right to a change " of venue of any civil action." It was held by this court, in *Baker* v. *Gordon*, 23 Ind. 204, that a proceeding by *habeas corpus* is not a civil case within the meaning of section 20 of the bill of rights, and that consequently such proceeding had to be tried by the court, and not by a jury. We are inclined to adhere to such ruling. We think it is equally clear that the proceeding under consideration is not a civil action within the meaning of the above section of the code, which gives the right to a change of venue. We are of the opinion that the court below committed no error in refusing to change the venue.

What we have said in reference to the change of venue applies to and disposes of the second assignment of error, which is based upon the refusal of the court to permit the cause to be tried by a jury. There was no error in such refusal.

Did the court err in overruling the motion for a new trial?

The first error which is alleged to have occurred on the trial is, that the court permitted the petitioner to testify to a conversation between her and the wife of the defendant, which

occurred at the house of the defendant, when he was not present.

In this ruling the court erred. Mrs. Garner was not a party to the proceeding, and her declarations were no more binding upon her husband than those of an entire stranger. It was not shown that she was in any sense the agent of her husband.

It is next claimed that the court erred in refusing to permit Mrs. Garner, the wife of the defendant, to testify in reference to the conversation detailed by the petitioner. We do not think so. Neither a husband nor a wife is competent to testify for or against each other. This rule is subject to an exception, as where husband and wife are both parties, and the wife has a beneficial interest in the action, she may testify for herself although her testimony may benefit her husband, and the same exception applies to the husband. See *Bennifield* v. *Hypres*, 38 Ind. 498.

It is next insisted that the court erred in refusing to permit the defendant to prove by the testimony of James G. Shields, George Lyman, Lucien G. Mathews, Mrs. Sarah South, and Mrs. Elizabeth Mann, that the general reputation of Belle A. Gordon, the petitioner, for virtue and chastity, in the community where she resided, had been bad from the year 1864, continuously to the commencement of this proceeding, and in limiting the testimony of such witness as to her general character for two years prior to the commencement of such proceeding.

In our opinion the above ruling of the court was clearly erroneous. It was alleged in the return to the writ, that the petitioner was an unsuitable person to be intrusted with the custody and moral and intellectual training of her infant daughters, and as evidence thereof it was charged that she was an unchaste and impure woman, and that her general character for chastity and virtue was bad in the neighborhood where she resided. Under the first allegation, it would have been competent to prove particular acts showing her want of chastity and purity. Under the second allegation,

proof of particular acts was not admissible, but proof of her general reputation in reference to chastity and virtue, in the community where she resided, was alone competent. When proof of either good or bad general character is admissible, it is competent for the party seeking to establish character, after he has proved either a good or bad character at the time of the trial, to show how long such person has maintained such character.

We know of no law or practice that would confine such inquiry to two years before the time of the trial. It is provided by section sixteen of the divorce law, that "a petition for divorce may be filed by the wife in her own name, and it shall be deemed sufficient evidence of good character if such petitioner shall satisfy the court or jury trying the same, that she had for two years previous to the filing of such petition, maintained a good reputation for chastity and virtue." 2 G. & H. 352.

The above section has no application to any case or proceeding except for a divorce.

We refer to the following authorities as to proof of general character. *Hopps* v. *The People*, 31 Ill. 385; 3 Greenleaf Ev. 25; Roscoe Crim. Ev. 95.

We proceed to inquire whether the finding of the court is supported by the evidence. We do not deem it necessary to go into an examination of all the evidence. We shall only give the substance of the testimony bearing upon the fitness and suitableness of the respective parties to have the custody and control of the children. First, then, of the petitioner. She was adopted by the defendant when she was a mere child, and was raised and educated by him, with whom she lived, and by whom she was supported until her marriage. Her husband died in 1863, when she and her two children went to live with the defendant. The defendant and his wife had the almost entire control, care, and responsibility of the children. The petitioner gave her children but little care or attention. She frequently left them for weeks at a time, and on more than one occasion she left them when they were

sick and needed a mother's care and love. It was shown that she had visited New York city, Cincinnati, Louisville, Gaines' Landing, New Orleans, Indianapolis, and Lafayette, either alone or accompanied by persons of bad reputation. It was proved by many witnesses that her general character for chastity and virtue was bad, and there was no evidence tending to show that her character was good. It was proved that she was in the habit of visiting a woman of infamous character in Louisville, and on one occasion she took her little girls with her, and remained some time at the house of such woman. It was proved that she kept in her bureau drawer books of an immoral, licentious, and lascivious character. We can do no more than give the titles of such books. They are as follows: "A Rational Guide, or Private Marriage Chart, for the use of all who wish to Prevent an Increase of Family;" "Errors in Courtship, and the Causes and Cures of Matrimonial Troubles;" "The Complete Master-Piece of Aristotle, the Famous Philosopher, displaying the Secrets of Nature in the Generation of Man, to which is added the Family Physician, being approved remedies for several · distempers incident to the Human Body;" "The Loves of Byron, detailing his various Amours and Intrigues with the most Celebrated Women of his Time." The above books are made a part of the record.

It was also proved that she was at the time of the trial, and for some time previously had been, residing on a farm near Lexington, Kentucky, as the house-keeper of a married man, who resided in one house, while his wife resided in another house about a mile distant, and that the petitioner intended to remove her children to the place where she was residing.

It was shown that she had no house or home of her own, and that she had no means to support and educate her children.

On the other hand, it was shown that Mr. Bently was the guardian of the persons and estates of the children in question; that they possessed some estate, but just how much was not shown; that he had placed the children with Mr.

Garner and his wife, who were upright, moral, and good people, and were devotedly attached to the children; that their physical wants were properly supplied, and their moral and intellectual training was faithfully attended to, by their guardian and the defendant and his wife; that all the estate of such children was in New Albany; and that the most of their relatives resided there.

The question is now presented for our decision, whether, upon the foregoing facts, the decision of the court below, awarding the custody of the children to the mother, was correct. The controversy is between the mother, the father being dead, and the guardian of the persons and estates of the infants.

The statute providing for the appointment of guardians for minor children contains the following provisions, namely: "Every guardian so appointed shall have the custody and tuition of such minor, and the management of such minor's estate during minority, unless sooner removed or discharged from such trust: Provided, that the father of such minor, or if there be no father, the mother, if suitable persons respectively, shall have the custody of the person, and the control of the education of such minor." 2 G. & H. 566, sec. 6.

It was said by this court, in speaking of the above section, in the case of *The State, ex rel. Sharpe,* v. *Banks,* 25 Ind. 495, that "the father is the natural guardian of his infant child, is responsible for its raising and education, and has the right to its custody. This is the well-settled rule, and the statute is simply declaratory of the right as it existed at common law. The law, however, has a tender regard for the interest of the infant, and in case it is made to appear that the father, by reason of his immoral and vicious habits and conduct, is rendered unfit to have the custody and training of his infant child, the court will refuse to award it to him, or will even direct it to be taken from him and placed where its moral training will be properly cared for."

Hurd on Habeas Corpus states the law thus: "The question of custody, between the conflicting claims of parents,

being one of discretion rather than strict law, the duty of determining it is not only important in all cases, but in some exceedingly delicate and embarrassing. The welfare of the child is the object to be secured, and that requires attention to many circumstances; such as its sex, age, health and social position as affected by that of its parents; its just expectations of property from them or either of them or from others; and the state of its morals and education, and the surest means, under the circumstances, of securing for it that discipline and instruction necessary to qualify it for that station in life which the parents, had no controversy arisen, it may reasonably be supposed, would have desired and been able by their fortune or industry to prepare it to occupy." Hurd Habeas Corpus, 463.

In determining whether the finding of the court below was right, upon the evidence, we are mainly to lose sight of the wishes of the contending parties, and consult principally the welfare of the infants. They were, respectively, nine and eleven years of age when this cause was tried, and are females. They are just of that age when they are easily influenced, either for good or evil. Impressions made upon their minds and guileless hearts would have a lasting influence upon their future lives. The influence of the mother is justly and naturally very great over her children, and especially her daughters. Daughters naturally and instinctively look to their mother for counsel, advice, and direction. The mother teaches both by precept and example. If the mother is a pure, virtuous, and exemplary Christian woman, abides in her house and surrounds her children with the purifying and restraining influence of a happy and cheerful home, her influence for good is as lasting as time and eternity. If, on the other hand, the mother is impure, unchaste, immoral, and "her feet abide not in her house," but she wanders about from city to city, her influence for evil is great and lasting. The constant and earnest desire of a good woman is, by precept and example, to do good and make others happy and virtuous. Her purpose in life is to

Garner *v.* Gordon.

alleviate suffering and elevate others to her own stand-point. But all history, experience, and observation demonstrate that an impure, immoral, and lascivious woman desires to degrade and debase others, and bring them down to her own position. There are many lamentable instances where even the love of a mother was not strong enough to prevent her from polluting the minds and corrupting the hearts of her own daughters. But even where an impure mother seeks by precept to keep her daughters pure and good, her evil example exerts a baneful influence upon them. Young girls should never be without the healthy and restraining influence of a cheerful and happy home, and should be guarded and protected from the evil example and baneful influence of an impure and lascivious woman and such associates as she would surround herself with. In our opinion, no mother who would keep in her possession such indecent, lewd, and lascivious books as the petitioner did, should be entrusted with the moral and intellectual training of young girls.

It has been wisely provided by the legislature, that the father, or if there be no father, the mother, if suitable persons, shall have the custody of the person, and the control of the education of their minor children, in preference to the guardian of their estates. But it is only where the father or mother is a "suitable person" that such preference is given. It is expressly provided, that "every guardian so appointed shall have the custody and tuition of such minor." When it is shown that the father or mother is, by reason of "mental, moral, or physical disqualifications," an unfit or unsuitable person to be intrusted with the custody of the person and tuition of his or her children, then the guardian is entitled to such custody and control.

It is very plain and obvious to us that the petitioner, in the case in judgment, is wholly unsuited and unfit to have the custody and control of her infant daughters. It is a delicate and painful thing to separate a mother from her infant daughters. We have the highest respect for the deep

and holy love of a mother, and unless restrained by a high and imperative sense of duty to secure the welfare and happiness of infants, we should be strongly inclined to recognize the right of the mother. We entertain no doubt as to our duty in this case. It is not the fault of the law that a mother and her daughters are separated, but it is solely and exclusively the fault of the mother, who, by her immoral and lascivious conduct, has rendered herself an unfit associate and instructor of her pure and guileless daughters.

In our opinion, the finding and judgment of the court below were contrary to the law and the evidence.

The last error assigned presents for our decision the question whether the court erred in refusing to give to the defendant the custody of the infants during the pendency of the appeal in this court.

It was held by this court, in *The State, ex rel. Sharpe*, v. *Banks, supra*, that an appeal would lie from a final judgment rendered upon a writ of *habeas corpus*, as in other cases under sections 555 and 556 of the code.

In the case under consideration an appeal was prayed and granted, and a bond was filed, and approved by the court. Upon the filing and approval of the bond, execution and all other proceedings on the judgment in the court below were stayed, and the court should have left the children in the custody of the guardian until the decision of this court. See sec. 555 of the code, 2 G. & H. 271.

The petitioner filed seven exceptions to the sufficiency of the return to the writ. The court sustained the second, third, fourth, and seventh exceptions. As the cause will go back for a new trial, it is necessary that we should pass upon such ruling. We have already set out in this opinion the exceptions, and do not think it necessary to restate them or their substance.

In our opinion, the court erred in sustaining such exceptions, and in excluding the evidence offered to support them. We do not think that any one, or, probably, all of them, constituted a sufficient answer to the writ, but all the

allegations had a bearing upon the case, and should have been duly considered and weighed by the court. As we have seen, it was more a question of discretion than of strict law. The welfare of the infants was to be more considered than the strict legal rights of the parties. It was surely proper for the court to know how the infants had been treated by the defendant and his wife, and how they were likely to be treated and cared for by the petitioner, if their custody was awarded to her.

The judgment is reversed, with costs; and the cause is remanded, with directions to the court below to grant a new trial, and for further proceedings in accordance with this opinion.

*A. B. Carlton* and *J. H. Stotsenburgh,* for appellant.