## STEPHEN J. CLARK

*vs.*

## JANE C. CLARK.

*Parent and child: contracts as to custody and care; advantage of child.*

In general, a parent can not by contract divest himself of his parental obligations, or submit them to the keeping of another, unless the agreement be for the benefit and best interest of the child.                              p. 118

The grandfather of a child had agreed with its mother that if she would let the child live with him, he would care for and educate the child at his expense, and allow the mother a certain sum per week to represent the help, etc., that the child had been to her; after having kept the child under such conditions for some time, the grandfather ceased making such payments to the mother. Upon a bill brought by the mother for specific performance of the contract, it was *held*, that as it appeared that the contract was for the advantage and welfare of the child, and since its enforcement would not be against either sound policy or good morals, the action of the lower Court in overruling the defendant's demurrer to the bill should be affirmed.                              p. 120

*Decided December 19th, 1913.*

Appeal from Circuit Court No. 2 of Baltimore City (GORTER, J.).

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Chester F. Morrow* and *Alfred S. Niles* (with whom was *Oscar Wolff* on the brief), for the appellant.

*Caleb D. Cherbonnier* and *Howard Bryant*, for the appellee.

BRISCOE, J., delivered the opinion of the Court.

The bill of complaint, in this case was filed by the appellee against the appellant, in Circuit Court No. 2 of Baltimore City, for the specific performance of a contract. The defendant, the appellant here, demurred to the bill, and for cause of demurrer, stated, (1), that the plaintiff has not stated in her bill such a case as entitles her to relief in equity against this defendant; (2), that the alleged contract is not a proper contract to be specifically enforced, because against public policy; (3), that the contract is too vague and uncertain to be specifically enforced; and (4), that no contract binding upon the defendant is set up in the bill.

The Court below, upon hearing, overruled the defendant's demurrer, and held, the contract to be a valid and enforceable contract, and gave leave to the defendant to answer the bill, within twenty days from the date of the decree.

From the order overruling the demurrer, the defendant has appealed.

The Court below, in its order, states, that the sole ground relied upon, by the defendant, in support of the demurrer, was that the bill did not set up a valid contract and that all other grounds for demurrer were waived at the hearing.

The facts upon which this controversy rest, are set out in the bill, and it will be necessary for a clear understanding of the case, that the substantial averments of the bill should be re-stated somewhat at length.

The bill avers that the plaintiff was married to one Howard L. Clark, the son of the defendant, about sixteen years ago, and as the result of the marriage, one child, Edna D. Clark was born who is now fifteen years of age, and that the plaintiff was divorced from her husband about five years ago.

By the second paragraph of the bill it is alleged, that after the plaintiff was separated from her husband, the defendant Stephen J. Clark, her husband's father, a resident of the City of Baltimore and State of Maryland, on or about the 1st of February, 1912, entered into a contract and agreement with her, as follows:

That if she would turn over to the defendant her daughter, Edna D. Clark, the defendant to have the care and custody of her, in consideration of this turning over of her daughter to the defendant, the defendant agreed to educate the said Edna D. Clark, to clothe her and to have the care and custody thereof, and further, to pay the plaintiff in consideration as above set forth, a sufficient sum to pay the board of the plaintiff and to take care of her generally.

The bill further avers, that the plaintiff performed her part of the agreement and turned over in conformity therewith her daughter to the defendant, and in further fulfillment of the agreement made by and between her and the defendant on the first day of February, 1912, began to pay to her the sum of six dollars per week and continued to pay the sum of six dollars per week until the 24th day of April, 1912, when he ceased to pay anything, and although she has called upon the defendant to keep his agreement in reference to the weekly payments to her, yet the defendant has refused so to do.

By the fourth and fifth paragraphs of the bill it is alleged that the defendant is a man of large means and the plaintiff, realizing that the defendant was perfectly able and capable of carrying out the agreement, made with her, entered into the same with him, the agreement to continue during the life time of the plaintiff; that before the agreement made with the defendant, the plaintiff and her daughter lived together

and were happy and contented, but since the agreement and in fulfillment thereof upon the part of the plaintiff, she and her daughter have been separated, the care, control and custody of the same being turned over as above set forth, to the defendant, and by reason of the agreement the plaintiff was compelled to give up her little home, which was occupied by herself and daughter because she could not live in her house alone, and consequently she took a boarding place, and because the defendant has refused to keep his agreement she did not have sufficient income to pay her board, and has been compelled to seek employment in order to do so, which would not be necessary if the defendant had kept his part of the agreement.

By the sixth paragraph, it is averred, that during the lifetime of Edna D. Clark, the infant daughter, the plaintiff has had the sole care and custody of her, supported and maintained her out of her individual funds, but believing that the defendant had ample means to educate and maintain her daughter, which would be to her greater advantage, entered into the contract as above set forth, and unless this Honorable Court compels, by its proper decree, the performance of the contract on the part of the defendant, she will continue to suffer as she has already done, serious loss and irreparable damage.

The bill, then, avers, that it will not be equitable and just for the defendant to perform one part of his contract and to leave the other part unperformed and inasmuch as the plaintiff has no adequate redress at law, she asks a Court of Equity to pass a decree compelling the defendant specifically to perform that part of the contract set forth, which he has failed to do, as alleged herein.

The prayer of the bill is (1) that the defendant be required by decree of Court, specifically to perform all the terms and conditions of the contract mentioned in the bill and (2) for other and further relief, as her case may require.

The contract which is sought to be enforced in this case, it will be seen, is set out in the second paragraph of the bill,

and it is assailed upon the ground that it is a contract by which a parent transfers and surrenders the care and custody of her child to another for a selfish consideration, and is, therefore, void and invalid as against public policy.

The principle is well settled, independent of statute, that a parent cannot by contract divest himself of his parental obligations or commit them to the keeping of another, unless the agreement be for the benefit and best interest of the child.

In *Brantly on Contracts,* sec. 105, it is said, the doctrine of the English Courts and those of some of the States is that a parent cannot lawfully deprive himself of the control and custody of his children and that consequently a contract by which a parent transfers the custody of his child to another and divests himself of his parental duty and power is void as against public policy. *In re Andrews,* L. R., 8 Q. B. 153; *State* v. *Baldwin,* 5 N. J. Eq. 454; *Wood* v. *Deaton,* 93 Texas, 247; *Hibbette* v. *Baines,* 78 Miss. 695.

It is also stated, however, the ruling of some Courts, is to the effect that a contract by the parents or the surviving parent, transferring the control of the child is valid, when the consideration is based upon the welfare, and for the advantage of the child. Some Courts indeed make the validity of the contract based upon whether or not it promotes the welfare of the child. *Weir* v. *Morley,* 99 Mo. 484; *Kelsey* v. *Green,* 69 Conn. 291; *Stringfellow* v. *Somerville,* 95 Va. 701; *Sheers* v. *Sterns,* 5 L. R. A. 781; *Van Dyne* v. *Vreeland,* 11 N. J. Eq. 371; *Hill* v. *Gomme,* 1 Beavan, 541; *Neals Executor* v. *Gilmore,* 79 Pa. St. 427; *Enders* v. *Enders,* 164 Pa. 266.

In 9 *Cyc,* 542, under the head of "Agreements affecting duties of Parents," it is said, A class of agreements of this character are those in which a father surrenders the custody of his infant child. Such agreements are not binding if they are contrary to the child's interest, for a parent cannot bind himself conclusively by contract to exercise, in all events, in

a particular way, rights which the law gives him for the benefit of his children and not for his own. Such agreements, however, may be valid and binding if they are clearly for the benefit and for the best interests of the child. *Andrews* v. *Salt*, L. R. 8 Chan. 622; *Hussey* v. *Whiting*, 145 Ind. 580; *Enders* v. *Enders*, 164 Pa. St. 266; *Van Dyne* v. *Vreeland*, 11 N. J. Eq. 370; *Hill* v. *Gomme*, 1 Beav. 540, 17 Eng. Chan. 540; *Neal* v. *Gilmore*, 79 Pa. St. 421; *Bonnett* v. *Bonnett*, 61 Iowa, 199.

While the case at bar is not altogether free from difficulty, we have been unable, after the most diligent search to find a case, where a contract such as the one now before us, has been stricken down, or declared void as against public policy, and good morals.

The principle announced in the cases cited by the appellant in his very carefully prepared brief, are not applicable to the special facts of a case like this, and cannot be held, as controlling, on this appeal.

The case of *Enders* v. *Enders*, 164 Pa. St. 266, decided by the Supreme Court of Pennsylvania, as late as October, 1894, is directly in point. The Court, after stating the contract between the grandfather and the son's wife, said: We concede, the authorities establish that the contract of a parent, by which he bargains away for a consideration the custody of his child to a stranger, he attempting to relieve himself from all paternal obligation, and place the burden on another, who is to shoulder it, without natural affection or moral obligation to prompt to the performance of parental duty, but only because of a bargain, is void as against public policy. Such a contract would be the mere sale of a child for money. But this was a family compact. The pride of the grandfather centered on the child as his only living male descendant in whose future there was promise; he was called by his name, and without question, both in blood and affection he stood near to him. Nor was his relation to the child wholly without legal responsibility. We are clearly of the

opinion that the tendency of such contracts by grandparents of good character and ample estate, and parents in reduced circumstances, where parental solicitude and affection are not to be extinguished, and where the welfare of the child is intended to be promoted, is neither to the injury of the public nor of good morals. The payment to be made the mother was by the contract fixed at the majority of the child, but there never was a time during its existence that the law would have declared it void, as against public policy, because it contemplated no severance of the parental relation, no extinguishment of parental solicitude, and was wholly for the welfare of the child. Such a custody as was necessary to gratify the pride and affection of the grandfather and further the boy's education, was relinquished; a custody, not unlike that which she would have surrendered, had she placed him in a boarding school for several years. As we see nothing in this contract which should prevent its enforcement, the judgment of the Court below is reversed, and judgment is now entered on the verdict for plaintiff".

The principle upon which the decision in *Enders* v. *Enders, supra,* was rested upon and the cases cited in support of the conclusion reached in that case, we think, are clearly applicable to the special facts of this case. The contract here in controversy, if supported by proof, should be enforced. It clearly appears to be for the advantage and welfare of the child and its enforcement cannot be against either "sound policy or good morals". We agree with the conclusion reached by the Court below, that the contract in this case is a valid and enforceable contract, and for the reasons stated herein, the order dated the 11th day of March, 1913, of the Circuit Court No. 2, of Baltimore City, overruling the defendant's demurrer will be affirmed.

*Decree affirmed, with costs.*