Ex REL. SHAW v. NACHTWEY.

1. **Habeas Corpus**: CUSTODY OF CHILD. Where a child has by permission of her parents resided for a certain time with others, who seek to detain her after the expiration of the time and with whom she prefers to remain, it was *held*, that while the wishes of the child should not be disregarded, yet the controlling consideration should be the best interests of the child, with a due regard to the natural rights of the father.

2. ———: PRACTICE. Although no exceptions were taken to the findings of fact, it was nevertheless the province of the appellate court to determine whether the conclusions of law were correctly drawn therefrom.

*Appeal from Order of Judge of Tenth Judicial Circuit.*

MONDAY, JUNE 19.

THE petition alleges that Hattie L. Shaw, aged twelve years, is illegally restrained of her liberty by the defendant, and prays the writ of *habeas corpus* to the end that said Hattie L. Shaw may be discharged from her illegal detention, and that petitioner may be awarded her custody and control.

Upon the hearing the judge dismissed the suit, and ordered that the custody of said child remain with Theodore Nachtwey and his wife. The plaintiff appeals.

*John T. Clark & Co.*, for appellant.

The parents are the natural guardians of their minor children and are equally entitled to the care and custody of them. (Code, § 2241.) A guardian appointed by a court of chancery during minority continues until the infant arrives at the age of twenty-one years. The infant is not entitled to come in as a matter of course at the age of fourteen and set aside the guardian at pleasure. (*In the matter of Nicoll*, 1 Johns., Ch. 25; *Jones v. Ward*, 10 Yerger, 61; *Perkins v. Dyer*, 6 Ga., 401; 3 Rich, 213; *Miles v. Haigler*, 10 Yerg., 210; *Gennett v. Talmadge*, 1 Johns., Ch. 154.). In the disposition of the child, its welfare is the object to be secured, and that requires attention to many circumstances, such as its age, sex, and the property and social position of the parents. (Hurd on Habeas Corpus, p. 463; 2 Story's Eq. Jur., § 1340; *People v. Mercein*, 3 Hill (N. Y.), 399.)

*L. E. Fellows* and *Hatch & Frese*, for appellee.

The court will not always and of course interfere upon *habeas corpus* and take a child, though under fourteen years, from the possession of a third person and deliver it to the father, against the will of the child. It will consult the inclination of the child if it be of sufficiently mature age to judge for itself. (2 Kent's Com., 10 ed., 202.) In all cases, if the child has arrived at the age of discretion, it will be permitted to elect for itself, provided its choice does not lead to an improper custody. (Hurd on Habeas Corpus, 462–3.) The father is not entitled to demand the delivery of the child to him, upon *habeas corpus*, as an absolute right. (*The People v. Mercein*, 25 Wend., 64.) The court is charged with determining when the child has reached the age of discretion. (Hurd, 532.) Mental capacity and not any fixed number of years is regarded as the criterion of the child's qualification to choose where choice is permitted. (Hurd, 533.)

DAY, J.—From the testimony introduced upon the hearing, the judge found the following facts:

" That Hattie L. Shaw is the daughter of the petitioner, D. L. Shaw; that she was born on the 24th day of December, 1862, and that on the 31st day of January, 1863, she was placed in the care and custody of Theodore Nachtwey, under and by virtue of a written agreement, signed by the said D. L. Shaw and Theodore Nachtwey, which agreement is in evidence on this hearing, and bearing date of January 31, 1863; that said agreement as between the said Shaw and Nachtwey is valid; that by the terms thereof the said child was to be taken by said Shaw when she reached the age of twelve years, and that she now is twelve years old; that, disregarding the expressed wishes and choice of the child, the said Shaw is entitled to her custody and control; that D. L. Shaw is a man worth from $30,000 to $40,000; that he has a comfortable home and a pleasant family of a wife and one son, aged now 15 years, his wife being a step-mother to the children of Mr. Shaw; that his entire family would welcome Hattie to their home and strive to make it pleasant for her, and that on the part of Mr. Shaw and his family I find no reasons why he should not have the custody of his child; that Theodore Nachtwey is a man of limited means, say from $5,000 to $7,000; that he has a comfortable home and a pleasant family, consisting of himself, wife, and the child in question; that during the period the child has been in his custody he, with his wife, has cared for and nurtured it with all the tenderness and affection that is due from natural parents to their own children, giving it every reasonable opportunity for educational and other improvements; that Mr. Nachtwey is in religion a Catholic, and that his wife is a member of the German Presbyterian church in Germany, and has not become a member here; that Hattie, since of suitable age, has attended the Congregational church, of which Mr. Shaw and wife are members, and she has also attended the Congregational Sabbath School, of which Mr. Shaw has much of the time been superintendent, and his wife a teacher therein; that the attachment between the child and Dr. Nachtwey and his

wife, is warm and confiding; that she speaks to and of them as father and mother (although she knows that Mr. Shaw is her natural father) and is devotedly attached to them.

"From a personal and private examination of the child, I find it is her earnest wish to remain in the custody of Dr. Nachtwey and his wife, and that she is decidedly and apparently irreconcilably opposed to going to her father's house as a home. The judgment is, that the writ of *habeas corpus* be dismissed, and that the custody of the child remain with Theodore Nachtwey and wife so long as circumstances remain unchanged, or until she shall express a willingness to go and reside with her father."

As between the plaintiff and the defendant, the plaintiff has the unquestioned legal right to the control and custody of his child, and the court so found. The feelings of the defendant and his wife are not entitled to consideration in the determination of this controversy, for they took the child with the express understanding, evidenced by a written agreement, that the child was to be surrendered at the age of twelve years, and it was their duty to deport themselves toward the child, and to foster on its part toward themselves, and toward its father, feelings which would be consistent with the performance of this agreement.

In addition to the facts found by the court, it is a fair and reasonable inference, from the whole testimony, that the apparent irreconcilable aversion of this child, to going to the house of her father as a home, arises more from the undue influence exerted over her tender mind by the defendant, than from an intelligent judgment as to her best future interests. It appears, from the testimony, that about the time the child attained the age of twelve years she ceased visiting plaintiff, and that she assigned as a reason that her ma would not let her continue such visits. It also appears that the visits of plaintiff and wife to the child were not encouraged.

The aversion of this child to her father, who is shown to be a christian gentleman, possessed of ample means, with a comfortable home and pleasant surroundings, is unnatural and unreasonable, and we cannot account for its existence without

concluding that the conduct of defendant and his wife has been inconsistent with the right of plaintiff to the possession of this child, under the written contract.

The judge allowed the preferences and wishes of the child a controlling influence in the case. Whilst they are not to be 1. HABEAS disregarded or ignored, yet the controlling con-corpus: cus-tody of child. sideration should be the present and future best interests of the child, with due regard to the natural rights of the father. In Hurd on Habeas Corpus, page 529, the following language is employed: " The welfare of the child then being the object to be attained, no consideration, calculated to influence the decision of the question, should be over-looked. Hence the wishes of the child are consulted, not because it has a legal right to demand it, but because it is material for the court to understand them, that it may be the better prepared to exercise its discretion wisely. It is not the whim or caprice of the child which the court respects, but its feelings, its attachments, its reasonable preferences, and its probable contentment. Such being the nature and ground of this practice, it is impossible to prescribe the precise weight which should be given to these wishes when ascertained. It may, however, be safely said, that when the parent has vol-untarily parted with the custody and seeks to recover it, if his right to recover it be doubtful or the assertion of the claim would be inequitable to others, or injurious to the child, or if no legal right to the custody be preferred by any one, the reasonable wishes of the child should be allowed a controlling influence."

In this case the right of the plaintiff to the custody of his child is not doubtful, but certain and absolute. The assertion of his claim is not inequitable to others, for it is in strict accord with their written agreement. The plaintiff's custody of the child would not be injurious to her, for he is shown to be in every way a suitable person to have the care of her, and both able and willing to provide for her a comfortable home. Whilst the wishes and preferences of the child, therefore, may not be wholly ignored, they are not entitled to a controlling influence; and, notwithstanding these preferences and wishes,

we feel satisfied that the permanent interests of the child, her intellectual culture and social position will be much promoted by placing her under her father's control.

The evidence shows that the plaintiff wishes to send his child abroad to school, in order that she may have better educational advantages than are afforded where she now resides; and, while he feels it to be his duty to do so, the law ought not to deny to him the right.

Whilst it may be true that the child is very much attached to the defendant and his wife, and that her feelings would be very much shocked by a separation, yet, in the nature of things, the laceration of her feelings can have but a temporary effect, and it is better that it should be borne for the promotion of her future and permanent interests.

In order that the transition may be gradually effected, and with the least possible shock to the sensibilities of the child, it is ordered that, for the period of six months, she be placed at some boarding school, to be selected by the plaintiff, removed from the influence or interference of the defendant and his wife, where the plaintiff may, by acts of kindness, gradually ingratiate himself into her affections, win her confidence, and establish his rightful parental authority. Plaintiff may move for a modification of this order, if he be so advised.

REVERSED.

ON REHEARING.

ROTHROCK, J. After the filing of the foregoing opinion, a petition for rehearing was filed by appellee, to which appellant replied, and we have again examined the case with the petition for rehearing and reply.

The petition for rehearing is based mainly on the ground that this is an ordinary action and is not triable *de novo* in this court, and that the opinion is based upon the theory that the action is triable anew here. It is true that, under section 2513 of the Code, *habeas corpus* should be prosecuted by ordinary proceedings, and the judgment of the court below should not be reversed because it is against the weight of the evidence. It must be so manifestly contrary to

the evidence as to indicate passion or prejudice in order to justify a reversal. In this case, however, the court below made findings of fact to which no exceptions were taken, and this being the state of the record, the only question to be determined is, was the conclusion of law correctly drawn from the findings of fact?

We are unanimously of the opinion that, upon the findings of fact alone, the court below should have awarded the custody of the child to its father. The question being purely a legal one, this court "may reverse or affirm the judgment or order below, * * * * * or may render such judgment or order as the inferior court or judge should have done according as it may think proper." Code, section 3194.

The reference to the testimony in the opinion may be entirely left out of view, and resting the case on the findings of fact we conclude that the judgment of the court below should be reversed and the order heretofore made in this court should stand. The opinion of the court heretofore filed is adhered to.

REVERSED.