## DRUMB v. KEEN ET UX.

1. **Parent and Child**: CUSTODY OF CHILD: HABEAS CORPUS. Where a child, after the death of his mother, was sent by the father to the grandparents, in pursuance of an understanding that the latter should have the child to raise, it was *held*, upon an application of the father for the custody of the child, that the welfare of the latter should be considered, and that the application should be denied unless the father could show that he was able and likely to make suitable provision for it.

| | |
|---|---|
| 47 | 435 |
| 85 | 52 |
| 47 | 435 |
| 101 | 667 |
| 47 | 435 |
| 118 | 203 |
| 47 | 435 |
| 123 | 66 |
| 123 | 169 |
| 47 | 435 |
| f125 | 464 |

*Appeal from Winneshiek District Court.*

THURSDAY, DECEMBER 13.

THE petitioner alleges that he is the father of Victor G. Drumb, a minor child of the age of five years, and that as such parent he is entitled to the custody of said child. He asks a writ of *habeas corpus* to the end that said child may be released from the illegal custody of the defendants and awarded to him. The District Court dismissed the petition, and adjudged that the defendants retain the said Victor in their custody. The plaintiff appeals.

*Murdock & Larkin*, for appellant.

*G. R. & W. Willett*, for appellee.

SEEVERS, J. On the trial in the District Court the following stipulation was entered into:

"The following facts are to be read in evidence on the trial, by agreement:

"That Victor G. Drumb is the child of plaintiff and his deceased wife, Agnes Drumb, and child is five or six years old; 1. PARENT and child: custody of child: habeas corpus. that plaintiff and wife were married in Clayton county, in 1870, and the child was born at McGregor, May 21, 1871; that after child's birth they removed with child to Indian Territory, and resided there until she died, in March, 1874; he is the only child; that plaintiff now resides at McAlester, in said Territory, and ever since she died; that he is a telegraph operator by trade, and

was at the time of his marriage; and during the time he resided there with his wife was engaged in that business, and as agent for the M. R. & Texas R. R. Co., and for that purpose he went there; and is also agent for Adams' Express Company at said town, which has a population of seven hundred white inhabitants, composed of miners and others; plaintiff is now single, and proposes to get married next year; one white school in the town, attended by some Indians from the country, and white children from the town; average attendance, twenty to forty pupils; plaintiff is thirty years old, in full health and vigor, and is an American by birth and education.

" Defendants received the child July 1, 1874, he having been sent by plaintiff. He sent a darkey woman, his housekeeper, along with the child to Clayton county. The whole expense of sending him, if it had been paid for, would have been $65.00, but by reason of plaintiff being in employ of railroad he procured passes for woman and child to Hannibal, Missouri."

Other evidence was also introduced, and the court made the following finding of facts:

" 1.   That the mother of the child requested before her death that, in the event of her death, her mother, the defendant, Catherine Keen, should have the child to raise, and that such request had the approval of the father, the plaintiff, and that in pursuance of such request the defendants sent for the child at their own expense and brought him to their home in Clayton county, Iowa, and that they would not have sent but for their understanding that they would raise him; that since they have had him they have taken good care of him; that they are good people, and have ample means to raise him; that they have a strong affection for the child and the child has a strong affection for them; that the father has no wife and no opportunities or means to take adequate care of the child, and that the good of the child requires that he should remain with defendants."

The disputed facts were but few, and they only remotely have any bearing on the gist of this controversy. But in so far as such facts have been found by the court below this court is bound thereby, as this action must be tried as ordinary ac-

tions at law in which the finding has the force and effect of the verdict of a jury. Code, § 2513; *Ex rel Shaw v. Nachtwey,* 43 Iowa, 653.

We do not understand that the court found or intended to find that plaintiff parted with the custody of the child under and by virtue of a positive contract, whereby he had deprived himself of all right to the custody during the whole period of the minority of said child, but only that there was an understanding that the defendants should have the child to raise. If the court intended by the word "raise" that it was the understanding of both parties the defendants were to have such custody until the child attained his majority, then we think the finding is so clearly against the evidence that it must be set aside, because there was *no* evidence to support it. The answer alleged that the agreement under which defendants obtained the child was contained in a letter which had been lost, the contents of which, one of the defendants testified, were as follows: "He (plaintiff) said Agnes is no better. She wants you to take Victor; thinks it best for you to have him; I think so too." This offer was accepted, and thereunder and thereby the child was delivered to the defendants. . Conceding this offer and acceptance to have the force and effect of a contract, we are clearly of the opinion it does not import that the plaintiff thereby deprived himself of the right to the care and custody of his child for any length of time. It may be admitted such a contract may be made, but certainly it should be clear, definite and certain.

As between the plaintiff and defendants the former is entitled to the custody of the child. But there are other considerations which impel us to say that he should not at present have the child awarded to his care and custody. The welfare of the child must be consulted. *Ex rel Shaw v. Natchwey,* before cited.

Said child, at the time of the trial below, was between five and six years old. He was too young to be consulted, or to have definite views which should be regarded on this subject. It was and is the duty of the court to act for him, and do that which, under the circumstances, is for his best interest and

welfare.   With the finding of the court as to the "opportuni-
ties or means" of the plaintiff at the time the cause was tried
we fully concur.   We cannot think it is best the child should
be sent to the Indian Territory, and placed, to a considerable
extent at least, in the charge of a comparatively ignorant
woman, either black or white, who would sustain no other re-
lation to him than that of an employe or servant of his father.
If we go behind the finding of the court and take the plain-
tiff's evidence as to the character and condition of his home,
we are forced to the conclusion that such home is unsuitable
for a child of his tender years, even if he could have there
that which he is now deprived of—a father's love, care and
protection.   This might be different if his present abode and
protectors were unsuitable.

It is barely possible that the judgment of the court below
might constitute a bar to the plaintiff's right to the custody
of the child at any future time.   If so, it should be in this
respect modified, so that he could at some future day renew or
make another application.   This we have the power to do
without reversing the judgment below.   Code, § 3194.   If
the plaintiff so elects, such a judgment will be entered in this
court as will save and protect his rights in the respect indica-
ted, or the cause will be remanded to the court below for this
purpose.   But under the circumstances we deem it proper the
plaintiff should pay the costs in this court.

MODIFIED AND AFFIRMED.