BONNETT, EX REL. NEWMEYER, V. BONNETT ET AL.

1. **Habeas Corpus:** FINDING OF FACTS IN. *Habeas corpus* is prosecuted by ordinary proceedings, and the determination of the court upon the facts has the effect of a verdict of a jury.
2. **Custody of Child:** SURRENDER BY PARENT. A parent can by agreement surrender the custody of his infant child to another, so as to make the custody of that other legal; and if, after such surrender, the parent seeks to recover the custody of the child, the court will consider the welfare of the child as the matter of primary importance. Under the facts in this case, (see opinion) *held* that the custody of plaintiff, an infant, was properly continued in the grandparents, as against the petition of the mother.

*Appeal from Van Buren District Court.*

SATURDAY, JUNE 9.

THIS is a proceeding in *habeas corpus*, the petition alleging that Festusina Bonnett is restrained of her liberty by Lewis and Amanda Bonnett. The court adjudged that the defendants do not illegally restrain Festusina Bonnett of her liberty, and that she be remanded to their custody. The plaintiff appeals.

*McNett & Tisdale*, for appellant.

*Sloan, Work & Brown*, for appellees.

DAY, CH. J.—The facts of the case as found by the court below are as follows: "The relator, Mary Newmeyer, is the mother of the plaintiff, Festusina Bonnett, and the defendants, Lewis and Amanda Bonnett, are her paternal grandparents. The father of the plaintiff died in October, 1877, and she was born on the fourteenth day of April, 1878. Her mother resided with the defendants from the death of her husband and until the plaintiff was about twenty months old. She did not then permanently change her residence, but for a few weeks was at her sister's, then returned to her home; after a while she went to her uncle's, and remained some three months, then home again, then to her father's and back home again, and so on, staying awhile with one relative and then with another, but returning at short intervals to her home, as she calls it, and where her child was with its grandparents. In July, 1881, she was married to her present husband, Henry Newmeyer, and is now residing in Macon county, Missouri. The testimony shows that she and her husband are persons of excellent moral character; that they have a small, comfortable home; that he is worth from $3,000 to $5,000, is a fair business man, doing well, is highly respected by his neighbors, is thirty-one years of age, and the relator twenty-five. The testimony also shows that the defendants are very worthy people, worth from $30,000 to $35,000, having a good home, and are greatly respected by all; that they reside in Van Buren county, in this state, where they have lived a long number of years.

"The plaintiff has been with her grandparents most of the time since her birth. She will be four years old next April. The defendants and the entire family are warmly attached to her, and treat her with the utmost kindness, and are unwilling to let her go. Her mother, since her marriage and since

obtaining a home of her own, desires the custody of the child, and this desire is warmly seconded by her husband. There is nothing to show that she has not a mother's love for her child; that she is not warmly attached to her, or that the child would not have a good, kind home with her mother.

"The relator made a request of the defendants for the custody of the child, which was refused. She then commenced this proceeding, suing out a writ of *habeas corpus*, alleging the child was illegally restrained of her liberty, etc. The defendants made return to the writ by answer, claiming that when the child was some two months old, she was given to them by her mother to raise; that they accepted the gift, and have had the care and custody of her since, that she was to remain with them until the death of her grandmother; that they have become greatly attached to her, and do not desire to surrender her custody to the relator, etc.

"The relator claims that she made no such gift or agreement with the defendants, and if she did, such an agreement, in law, would be void and not binding on her; that she is the natural guardian of said child, and is entitled to her care and custody, unless she has in some way forfeited such right by improper conduct and the like.

"The testimony, in my judgment, fully sustains the claims that the relator gave the child to the defendants to be theirs to raise, until the death of Amanda Bonnett; that they should have the care, custody and control of the plaintiff until the happening of said event. The defendants under such agreement or understanding took the child, and have well cared for her since, and are willing to care for her in the future."

*Habeas corpus* is prosecuted by ordinary proceedings, and the determination of the court upon the facts has the effect of a verdict of a jury. *Shaw v. Nachtwey*, 43 Iowa, 653, *Drumb v. Keen*, 47 Iowa, 435. The evidence supports the facts found by the court in this case. The parents are the natural guardians of their minor children, and are equally entitled to the care and

1. HABEAS CORPUS: finding of facts in.

custody of them. Either parent dying before the other, the survivor becomes the guardian. Code, § 2241 and 2242. The right of the parents, however, to the custody of their children is not absolute under all circumstances. In *Clark v. Bayer*, 32 Ohio St., 299, it is said: "It sometimes happens that parents have abandoned their minor children,

2. CUSTODY of child : surrender by parent.

or by act and word transferred their custody to another. In such cases, where the custodian is in every way a proper person to have the care, training and education of the infant, and the court is satisfied its social, moral and educational interests will be best promoted by remaining in the custody of the person to whom it was transferred, or received, when abandoned, the new custody will be treated as lawful and exclusive. After the affections of both child and adopted parent become engaged, and a state of things has arisen which cannot be altered without risking the happiness of the child, and the father wants to reclaim it, the better opinion is that he is not in a position to have the interference of the court in his favor. His parental rights must yield to the feelings, interests and rights of other parties acquired with his consent." The weight of authority, we think, sustains the position that a parent can by agreement surrender the custody of his infant child, so as to make the custody of him to whom he surrenders it legal. See upon this point the following authorities: Tyler on Infancy, 283; *Pool v. Gott*, 14 Law Reporter, 269; *The State v. Smith*, 6 Greenl., 463; *McDowle's Case*, 8 Johns., 328; *State v. Barrett*, 45 N. H., 15; *Dumain v. Gwynne*, 10 Allen, 270; *Commonwealth v. Barney*, 4 Brewster, 409; *Commonwealth v. Gilkeson*, 1 Phil., 194; *Chapsky v. Wood*, 26, Kan., 650; *In the Matter of Goodenough*, 19, Wis., 274. When a parent has, either by abandonment or contract, surrendered his present legal right to the custody of a child, in all controversies subsequently arising respecting its custody, the matter of primary importance is the interest and welfare of the child. To this the right of the parent

must yield. In this case the mother of the child is remarried and living in Missouri. Under the law recognized in that state, the step-father is not under a legal obligation to maintain his step-children. *St. Ferdinand Academy v. Bobb*, 52 Mo., 357. The birth of other children would give rise to new relations, and create new interests, obligations and duties. In view of all the facts found by the court in this case, we cannot say that the interests of the minor would be promoted by taking it from the custody of its grandparents, nor can we hold that the defendants illegally restrain the child of its liberty. The judgment of the court below is

AFFIRMED.