STEARNS *v.* ANDRE.

PARENT AND CHILD—CUSTODY OF CHILDREN—INFANTS.
> On certiorari, to review the judgment of the trial court, on *habeas corpus*, awarding the custody of minor children to the maternal grandfather rather than to the father, the judgment of the trial court is affirmed by an equally divided court.

Certiorari to Ottawa; Cross (Orien S.), J.   Submitted January 18, 1927.   (Docket No. 107.)   Decided June 24, 1927.

*Habeas corpus* proceedings by Maurice L. Stearns, against Cornelius Andre for the custody of his infant children.   Judgment for defendant.   Plaintiff brings certiorari.   Affirmed by an equally divided court.

*Seymour H. Person* (*Reynolds, Pierce & Planck,* of counsel), for appellant.

*Fred T. Miles,* for appellee.

CLARK, J.   Of the marriage of Maurice L. Stearns and Ida Stearns two children were born, Wesley on January 13, 1918, and Neil on June 3, 1921.   In February, 1922, Mrs. Ida Stearns left her husband, taking the children, and went to her parental home in Ottawa county.   She filed bill for divorce.   She was given decree on March 19, 1923; the court finding:

\* \* \* "that the said defendant, Maurice Lane Stearns, has been guilty of several acts of extreme cruelty and nonsupport therein charged, and that he is not a suitable person to have the care, custody, and education of the minor children, the issue of said marriage." \* \* \*

The case was not contested.   The decree recites and

Certiorari, 11 C. J. § 413 (Anno).

approves a property settlement, and it awarded the children to the mother.

In June, 1923, Mr. Stearns married Edith Nichols, a widow, who had a child then about five years old, and who owned a home in Lansing, in which home Mr. Stearns since the marriage has resided with his wife and her child.    Ida Stearns married John DeYoung on May 29, 1924, and with her children lived with him in his home across the road from the farm home of her parents until about Christmas time before her death, March 25, 1925.    From February, 1922, to March, 1925, except as above stated, the children lived and were cared for in the home of the said grandparents, Mr. and Mrs. Cornelius Andre.    After the mother's death, the children, agreeable to the wish of their dying mother, were taken by the grandparents, and the father sought to gain from them custody of the children, and was refused.    He instituted actions of *habeas corpus* against Cornelius Andre, which actions were consolidated by court and counsel in the trial.    Defendant had judgment, which plaintiff reviews on certiorari.

Law applicable to this case is discussed in *Greene* v. *Walker*, 227 Mich. 672, at page 682.    It was there recognized that an important question is the welfare of the child; but of the parent's seeking custody of a child it was said:

"But, if the father be honest, moral, affectionate to his children, and his home be surrounded with good influences, and it is apparent that the child will receive kind treatment in it, in my opinion he is entitled to its custody.    I think this court has always recognized the *prima facie* right of the parent, and has never decided against such right, except in cases, like the one under consideration, where the facts justified a denial of it."

With respect to the rule relative to the welfare of the child, it was held in *Re Goldinger*, 207 Mich. 99:

"We are unable to find, however, that this court has ever said, or interpreted the rule to mean, that a father would be deprived of the possession of his child where it clearly appears that he is a man of good habits, honest, and well able to provide for his child."

It is the statute law of this State that the father, and in case of his decease the mother, if competent and otherwise suitable, shall be entitled to the custody of a minor child.    3 Comp. Laws 1915, § 13955.

On certiorari, a province of this court is to consider questions of law; not to weigh evidence except to determine that there is an entire absence of proof on some material matter (*People* v. *Swanson,* 217 Mich. 103; *Carpenter* v. *Carpenter,* 149 Mich. 138).    We may inquire whether the evidence as a matter of law supports the judgment.    *Partch* v. *Baird,* 230 Mich. 615.

The trial judge found:

"There is no question but that the children are in a good home at the present time and that they have the proper home influences and that proper and suitable care is being given them.    There is no question raised but that the children will continue to receive proper care and support if left in the present home, and that the respondent is amply able, financially, and is willing to provide for all the wants of the children and is able and willing to give them a good education. The manner in which he has reared his own children shows that these grandchildren, if left in his care, will not be neglected in any way.    The wife of the respondent, the grandmother of the children, is a kind Christian woman of the type that will give her best service to see that the best influence surround the children.

"The court doth further find that the only question in the case is whether the facts established in this case are sufficient to deny the father the rights to the custody of these children.

"The attitude of the father towards the mother of these children and his having been guilty of such conduct as to compel the mother to take the children from his home; his lack of interest as shown in this case

in his children ever since that time until the hearing of this case; the fact that the youngest child does not know his father and that the present Mrs. Stearns, wife of the petitioner, is an entire stranger to both children; and the fact that the father is away from home a great deal of the time; and the further fact that the father failed truthfully to give his testimony on the hearing of this case, make it satisfactorily to appear in the court that the father of these children, the petitioner, is not entitled at the present time to the custody of the children involved in this suit and that the welfare of the children will be best served by leaving them where they are at the present time in the home of the respondent."

The finding relative to unfitness of the father, the plaintiff, that he did not testify truthfully in the case at bar has support in the record and may not be disturbed. The further finding that the plaintiff had been guilty of misconduct which compelled his wife, mother of the children, to leave him and to take the children from his home, likewise is supported by the record and must stand. We need not discuss the finding of plaintiff's unfitness further, being of the opinion that there is evidence sufficient in law to support it. It will serve no good purpose, and it will not aid any of the parties interested, to detail further the facts. They are stated sufficiently by the trial judge, whose finding that the welfare of the children will be best served by leaving them with their grandparents is supported by evidence sufficient in law.

Judgment affirmed.

SNOW, FELLOWS, and McDONALD, JJ., concurred with CLARK, J.

BIRD, J. I am not in accord with the conclusion reached by Mr. Justice CLARK in this cause. The question at issue is whether plaintiff's two children shall live with him or with their grandparents. The

239—Mich.—27.

children's ages are seven and four.   When the children were much younger the plaintiff and his wife had disagreements which ended in a separation, and later a divorce.   The mother was awarded the custody of the children.   Later she remarried and resided near the grandparents.   Before her marriage, and since her death in 1925, the children have been with the grandparents.   After the decease of the mother, plaintiff made an effort to get the children, but the grandparents refused to surrender them.   He brought *habeas corpus*.   An extended hearing was had, but the trial court refused the prayer of plaintiff's petition, and he reviews the proceedings on certiorari in this court.

The statute applicable in such circumstances provides:

"SECTION 6. The father or mother of the minor, and if one of them be deceased, then the survivor thereof, being respectively competent to transact their own business, and otherwise suitable, shall be entitled to the custody of the person of the minor and to the care of his education."   *   *   *   Act No. 344, Pub. Acts 1921 (Comp. Laws Supp. 1922, § 13955).

This statute, under the conditions presented by this record, gives the father the *prima facie* right to the custody of his children until the court finds that the father is incompetent to transact his own business or is otherwise unsuitable.   There is no claim nor finding by the court that plaintiff is not competent to transact his own affairs.   Neither is there any finding by the court that he is otherwise unsuitable to have the care and custody of the children.   But the court does find that the grandfather's home, in which they have been living, is a *more* suitable place for them. This method of determining who should have the custody of one's children would, if carried to its logical conclusion, award all of the motherless or fatherless children to Henry Ford or John D. Rockefeller, be-

cause, with their large means, they could do more and give the children greater advantages than any one else. A reasonable construction of this statute is not who can do the most for them, but whether the father or mother as survivor is a proper and suitable person to have the care and custody of them.

The case of *In re Goldinger*, 207 Mich. 99, and *Partch* v. *Baird*, 227 Mich. 660, were both cases where the contest was between the parent and the grandparent. The court in neither case found that the surviving parent was an unsuitable person to have the care of the children, and this court in both cases awarded the children to the parent.

Some observations were made in *Hibbette* v. *Baines*, 78 Miss. 695 (29 South. 80, 51 L. R. A. 839), which are apropos to this situation:

"There is much loose talk in the books about the best interest of the child, and more as to the right of the father. In the effort to escape from the arbitrary rule laid down by the common law as to the father's right, the danger is lest the pendulum swing too far, under modern decisions, the other way; and too much disposition is manifest in some cases to consult, not the permanent well being of the child so much as its immediate enjoyment; to stand not at the center of the whole circumference of the facts making up the life of the child from childhood to manhood or womanhood, but in that segment of those facts relating merely to what will make the child happy at the age he may be when the custody is determined. Parental authority and affection are not antagonistic to filial obedience and happiness. They are reciprocal and correlative."

In the case of *Griffin* v. *Gascoigne*, 60 N. J. Eq. 256 (47 Atl. 25), where the contest was between the parent and the grandparent, the court made some pertinent observations:

"Such a view would take his child from the poor man and give it to his richer neighbor who might offer to adopt it. It would stand as a temptation to the

breaking of the family ties whenever the attractiveness of a child might tempt a stranger who could secure it a higher station in life, to make the struggle for its possession.     In the rightful adjustment of the family relation, the child should occupy that station in life into which he is born.     If his father is poor, he must share his poverty.     If the father is cross and ill-tempered and is occasionally inebriated, these are distressful characteristics which may make the child's life less happy, but, until it is shown, that they are of such force and importance as to endanger the child's welfare in that place in life into which it has pleased God to call him, their existence constitutes no reason to deprive the father of his possession of his child."

The trial court not having determined that the father in the present case is unsuitable to have the care and custody of the children, we may examine the record to determine whether the father has the statutory qualification to demand and have the custody of them. *Partch* v. *Baird, supra.*     The record shows that plaintiff is a resident of Lansing, and has a home in a good neighborhood, within four blocks of a schoolhouse.     He has an established business, which last year yielded him $5,000; that he is remarried to a respectable woman, who has been a professional nurse, and who indicates her willingness to receive and care for the children.     A large number of prominent people who knew him testified to his good character and good personal habits.     Even the defendant and his wife testified to his good personal habits, and nothing derogatory was testified to except in connection with the divorce proceedings, or matters growing out of it.

If we take plaintiff's *prima facie* right to his children, and add to it the reputation given him by his neighbors and townspeople, he is entitled, in the law, to the custody of his children, and I am in favor of their being awarded to him, with costs to the plaintiff.

SHARPE, C. J., and STEERE and WIEST, JJ., concurred with BIRD, J.