Roger Adair, Appellant, v. Joe Clure, Appellee.

No. 42429.

June 23, 1934.

White & White, for appellant.

Boorman & Whitmore, for appellee.

Kintzinger, J.—A child was born to Mr. and Mrs. Adair in a hospital in Atlantic, Iowa, on February 20, 1931. Prior to that time the parents lived on a farm about twenty miles from Atlantic. After the birth, the mother remained in the hospital ten days. Mr. Adair's mother lived in Atlantic with the defendant, Joe Clure, who was then her fourth husband. On leaving the hospital, Mrs. Adair and the baby went to Mrs. Clure's home for three or four days. Then she and the baby returned to their home on the farm. Shortly thereafter the baby took sick and they consulted a doctor in Atlantic. The baby's condition was so bad that frequent medical attention was necessary. While the baby was sick, Mrs. Clure called at the Adair home. The doctor in Atlantic had complained about making twenty-

mile trips into the country to visit the child, and at Mrs. Clure's suggestion she took the baby to her home in Atlantic. There is some evidence that the baby arrived at the Clure home in a dirty condition and without sufficient clothing, but the trip to Atlantic from the farm was twenty miles; the baby had been suffering from diarrhea and fever, and when it arrived there its clothing was soiled and dirty, and its body sore. A complete set of clean baby clothes had been made by its mother's sister and these were sent with the baby. When the baby left home, the mother was too ill to go along.

The child remained ill at the Clure home for several months. During that time the parents frequently called to see him. Thereafter the parents were compelled to give up the farm. Thereupon the mother went to live with her parents temporarily and the father with Mrs. Clure, his mother. In about three months thereafter the parents moved into a small home in Atlantic. The child was allowed to remain at the grandmother's home until her death on June 20, 1933. During those two years, there had been no dispute or difficulty about the custody of the child. The parents often called at the Clure home, and at frequent intervals the child was with them. On account of the financial depression Mr. Adair did not have steady employment and the child was allowed to remain at his grandmother's home until her death. Thereafter the parents attempted to regain the full custody of the child, and took him to their home. The defendant, Clure, called at their home for the child, and with the assistance of two others, forcibly took him from the parents. At that time, the father actually fought with Clure to retain possession of his child, but the defendant succeeded in getting it away.

While the child was in the Clure's custody, most of his expenses were paid by Clure. Mrs. Adair, however, and two of her sisters furnished considerable clothing for the child, and Mr. Adair paid his mother some money at different times to help pay expenses.

Some evidence tends to show that some time after the child came into the Clure home, one of the parents had agreed to give Mrs. Clure his permanent custody. This was denied by both parents, and there is no evidence to show that such an agreement was made with both parents. The lower court did not determine whether or not such agreement was entered into. It is our conclusion that none was entered into by either parent.

The lower court awarded the custody of the child to the defendant, Joe Clure, but such ruling was not based upon any agreement.

The ruling was based upon the following finding of facts: (1) That the parents have no financial means, and that the father has had no steady employment for a long time; (2) that the child has been out of the custody of the mother and father since it was about two weeks old; (3) that the parents occupy two rooms in a five-room house; (4) that the parents were at one time separated for about three months; (5) that the parents were indifferent in some degree toward the welfare of the child since it was taken into the Clure home; (6) that the defendant is a man of good habits and character, is gainfully employed, and owns a home; is attached to the child, has paid for his care, and is capable of caring for the child in the future.

This action was commenced in July, 1933, when the child was less than two and a half years old. The question raised is whether or not, under the facts as hereinabove disclosed, the parents are entitled to the custody and control of their own child, as against the defendant, who is of no blood relationship whatever.

I. Defendant contends that this is a law action and that the findings of facts by the trial court are final. This is the general rule, but it has been modified in habeas corpus proceedings, where the custody of a minor child is involved. It is now the settled rule in this state that where the issue turns upon the best welfare of the child the principles of equity should be applied. Barnett v. Blakley, 202 Iowa 1, 209 N. W. 412; Jensen v. Sorenson, 211 Iowa 354, 233 N. W. 717. In Jensen v. Sorenson, supra, loc. cit. 367, in an opinion written by Justice Evans, we said:

"Where the issue turns upon the best welfare of the child and involves the overturning of presumptive parental rights in the interest of the child, we have found it difficult to separate questions of law from questions of fact, and have found ourselves unable to adhere very strictly to the rule contended for by appellee. We have necessarily recognized the fact that the determination of such issues carries us into the field of equity, and that it is indispensable that principles of equity be applied."

In a determination of this case, therefore, the consideration of the evidence is indispensable.

II. In determining this case, we must remember that our statutes make the parents the natural guardians of the persons of

their children, and give them their custody and control. Section 12573 of the Code provides as follows: "Parents are the natural guardians of the persons of their minor children, and equally entitled to their care and custody." Most of the cases heretofore decided involved a dispute between the parents themselves, or between other relatives. There is no dispute in this action between the parents. Both are asking for and are anxious to have the custody and control of their only child. The paternal grandmother of the child is now dead, and her widower is asking for such custody for himself. Notwithstanding our statutory provisions, we have held that, in a determination of an action of this kind, the court will be governed by the best interests of the child. Barry v. Reeves, 203 Iowa 1345, 214 N. W. 519; Sandine v. Johnson, 188 Iowa 620, 176 N. W. 638; Bonnarens v. Klett, 213 Iowa 1286, 241 N. W. 483; Drumb v. Keen, 47 Iowa 435; Miller v. Miller, 123 Iowa 165, 98 N. W. 631.

"The legal right of the parents, however, should never be lost sight of as an influential factor, and the court should always give the custody to them, unless they so conduct themselves or the conditions are such, as to render it essential to the safety and welfare of the child in some serious and important respect, either physically, intellectually, or morally, that it should be removed from their custody." 46 C. J. 1239; Stearns v. Andre, 239 Mich. 414, 214 N. W. 421; Smith v. Moore (Tex. Civ. App.) 171 S. W. 822, loc. cit. 825.

"A parent who is of good character and a proper person to have the custody of the child and is reasonably able to provide for it ordinarily is entitled to the custody as against other persons, and this rule applies although such others are much attached to the child, and the child is attached to them." 46 C. J. 1228; Winter v. Winter, 184 Iowa 85, 166 N. W. 274; Risting v. Sparboe, 179 Iowa 1133, 162 N. W. 592, L. R. A. 1917E, 318; In re Smith, 158 N. W. 578; Brem v. Swander, 153 Iowa 669, 132 N. W. 829; Smidt v. Benenga, 140 Iowa 399, 118 N. W. 439; Van Auken v. Wieman, 128 Iowa 476, 104 N. W. 464; Dunkin v. Seifert, 123 Iowa 64, 98 N. W. 558; Shaw v. Nachtwey, 43 Iowa 653.

It is the general rule of law in this and other states that there is no ground upon which the courts can interfere with the rights of the parents except that of imperative necessity. The facts in this case show that the parents have a home of their own, that the plain-

tiff's father, who is also a man of means and gainfully employed, has agreed to assist the parents of the child in caring for him when necessary. This child is only two and a half years old, is still of tender years, and was in the Clure home only about two years. The parents have been in constant touch with the child during all of that time. It has frequently been with its parents, and no such binding ties have attached between it and Joe Clure as to make it any great hardship upon him or the child to deprive him of its custody. The defendant is well advanced in years, he is now unmarried and will be dependent upon a housekeeper or others to care for his home and the child; he is engaged in trucking and frequently is away from home all night. It necessarily follows that the care and bringing up of the child must be left largely to a housekeeper or others. It is true that the parents of the child have been in needy circumstances, and that the father has not been fully employed; but this has been true of hundreds of thousands of other fathers in these times. Such condition cannot be sufficient grounds for depriving the parents of the custody of their children.

It may be conceded that Joe Clure is greatly attached to the child, and that he has a kindly disposition, and is well able to care for him. But this alone is not sufficient to award him its custody. Although the parents may not have been able, on account of the child's health and their financial conditions, to properly care for him during its early sickness, there is no evidence to show that they are not able so to do now. In fact, the record shows that with the help of the mother's father they are able to do so.

There is no claim that the parents of the child are immoral or otherwise incompetent to bring up their child. Nor can it be said that they are not attached to him, or do not desire to be burdened with his care. The contrary is demonstrated by the persistent efforts of the parents, who have been actually, and are now legally, fighting to regain his custody.

It is the settled rule of law in this state that the surrender of the custody of a minor child by its parents is presumed to be temporary, unless the contrary is made to appear. Van Auken v. Wieman, 128 Iowa 476, 104 N. W. 464; Bonnarens v. Klett, 213 Iowa 1286, 241 N. W. 483; Drumb v. Keen, 47 Iowa 435; Miller v. Miller, 123 Iowa 165, 98 N. W. 631; Risting v. Sparboe, 179 Iowa 1133, 162 N. W. 592, L. R. A. 1917 E 318; Dunkin v. Seifert, 123 Iowa 64, 98 N. W. 558. The fact that a parent is less able than

another to provide for his child will not support a claim of adoption, where it appears that he has not abandoned its custody, is able to give it a decent support, and morally fit to have its custody. In Van Auken v. Wieman, supra, loc. cit. 478, we said:

"There is no ground upon which the courts can interfere with the right thus recognized, except that of imperative necessity; that is to say, there can be no interference with the natural right of a parent except upon showing of gross misconduct, either willful or enforced, and in character such as to threaten serious and permanent detriment to the rights and interests of the child. No consideration such as the advantage of wealth, or social status, or even of personal affection, can of itself be sufficient. If the parent is a proper and competent person, and has not waived or forfeited his right, custody must be awarded to him."

In Risting v. Sparboe, supra, loc. cit. 1136, we said:

"Human experience has demonstrated that children ordinarily will be best cared for by those bound to them by the ties of nature, 'bone of their bone and flesh of their flesh.' Something more than the material things of life is essential to the nurture of a child, and that something is the father's and the mother's love, or as near its equivalent as may be. Recognizing this, the law raises a strong presumption that the child's welfare will be best subserved in the care and control of parents, and in every case a showing of such relationship, in the absence of anything more, makes out a prima facie case for parents claiming the custody of their children. 'Indeed,' as said in one case, 'this presumption is essential to the maintenance of society, for without it man would be denaturalized, the ties of family broken, the instincts of humanity stifled, and one of the strongest incentives to the propagation and continuance of the human race destroyed.' "

In Dunkin v. Seifert, supra, loc. cit. 67, we said:

"Counsel for appellant lay principal stress upon the alleged fact that the interest of the child will be promoted by leaving it with its grandmother. In one sense that fact may be admitted without affecting the conclusion we have here reached. It is true, it appears the grandmother is a woman of considerable means, and it is quite possible she can give the child more of the comforts and

luxuries of life, and a better education, than the father can afford; but this, we think, is not in itself a controlling consideration. If it were admitted to be such, then no poor man could hope to retain the nurture, comfort, and companionship of his own child against the claim of a rich neighbor who may be inclined to offer it a home. As between persons claiming with equal right, these advantages of wealth and opportunity may have much weight; but as against a man who has never abandoned or surrendered the custody of his child, who is able and willing to give it a decent support, and is morally fit to have it in charge, the wealth or position or moral worth of an opposing claimant is of little moment."

In Gilmore v. Kitson, 165 Ind. 402, 74 N. E. 1083, the court said:

"Courts must not be tempted to interfere with the natural order of family life except in special cases of extreme urgency. * * * Paternal control of the family has been a fundamental principle in the history of mankind, and its free exercise, restricted only in the interest of humanity and good morals, is essential to the highest development of the race. What influence more likely to lead to despondency and self-destruction than the unnatural separation of a parent from his child, and what greater stimulus to worthy ambition and noble endeavor on the part of a father than the care and companionship of his motherless girl?"

In Watts v. Lively (Tex. Civ. App.) 60 S. W. 676, the court said:

"The issue as to what is for the best interest of the child is not determined by showing in whose custody it would likely be more comfortably reared. In order to overcome the presumption of law that the best interest of the child would be subserved by placing it in the custody of the father, who is responsible for its being, and who, under the laws of God and of man, is held responsible for its care and protection, it must plainly appear that the father is unworthy of the trust."

We approve the rule announced in the foregoing cases. In the case at bar it is not even certain that the defendant, Joe Clure, will in the future years be able to take better care of the child than its parents. The defendant may be temporarily employed, and may have some little property, but with the advance of years his financial

condition may change. The parents are, at the present time, in a position to care for the child, if given into their custody. The evidence shows that since the death of the paternal grandmother the parents have been anxious to regain the full custody and control of their child. The evidence does not show that the best interests of the child will be served by awarding its custody to the defendant, Joe Clure, or that he will be in a better position to take care of it in the future than its own parents.

For the reasons hereinabove set out, we are constrained to hold that the lower court erred in dismissing the writ. Its judgment is therefore hereby reversed and remanded for judgment in harmony herewith.—Reversed and remanded.

All Justices concur, except Justice EVANS.